THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. IRVING J. SHERMAN, Appellant.

First Department, June 5, 1942.

*Irving J. Sherman, pro se.*

*Francis C. Leffler* of counsel [*Frank S. Hogan, District Attorney*], for the respondent.

CALLAHAN, J.   Appellant having been indicted by the grand jury of New York county for the crime of forgery in the second degree and grand larceny in the second degree, was convicted of the crime of forgery in the second degree.   The grand larceny counts were withdrawn at the close of the People's case.   At the same stage of the trial, defendant-appellant, upon his own choice, discharged his attorney and proceeded without the aid of counsel.

Appellant again appears on this appeal without the aid of counsel. He urges that numerous errors were committed at his trial.   Many of these contentions, we find, are unsupported by the record. We do find, however, that there was error by the trial court in the exclusion and reception of evidence and additional error in certain statements made by the court in its charge to the jury.

The testimony adduced upon the trial disclosed that on June 30, 1941, the appellant procured his employee, Maurice Renard, to draw a check for $1,000 on the Harrisburg Trust Company of Harrisburg, Pa., which check he directed Renard to sign with the fictitious name of "A. L. Johnson."   At appellant's further direction, this check was deposited a day or two later in an account which appellant had opened with Manufacturers Trust Company of New York city.   A bookkeeping credit was given to appellant's

account for this $1,000 item. About July 9, 1941, the $1,000 check was returned by the Harrisburg bank to Manufacturers Trust Company which, in turn, sent it to appellant with the notification that no account was maintained by the drawer in the Harrisburg bank. However, through an error of a bookkeeper of Manufacturers Trust Company, no reversing entry was made in appellant's account debiting the $1,000.

At about the time that the $1,000 check was deposited, appellant drew a check for $500 on his Manufacturers Trust Company account to the order of New York State Mortgage Commission. This check was delivered to the liquidation division of the Commission in connection with some real estate transaction which appellant had entered into with the Commission. The $500 check was presented by the Mortgage Commission to Manufacturers Trust Company and was paid on or about July 23, 1941. On or about July 29, 1941, Manufacturers Trust Company discovered its failure to make the proper reversing entry on the returned $1,000 check. When this error was corrected and a proper debit made, an overdraft of $588.57 appeared. It is thus apparent that the $500 check was the basis for the major portion of such overdraft. Without it there would be, at most, an overdraft of $88.57, part of which was made up of bank charges for protest items. The $500 check above referred to was the basis of the larceny counts found in the indictment.

In his opening address to the jury, the district attorney stated that he intended to prove that the $500 check was collected in accordance with an agreement appellant made with the Mortgage Commission. The prosecutor asserted that through this payment Manufacturers Trust Company was defrauded of $500. The $500 check was received in evidence and exhibited to the jury. It was not withdrawn from evidence when the larceny counts were dropped and the jury continued to have the opportunity to examine it in connection with its deliberations. Defendant's counsel in his opening address had made the claim that the $500 check had been delivered to the Mortgage Commission in escrow and that its presentation was due to an error by the Mortgage Commission. He also stated that he would prove that the $500 received on this check by the Mortgage Commission had been returned by it to Manufacturers Trust Company. We have no way of determining which of these contentions was correct.

The People offered no proof whatever concerning the transaction in connection with which the $500 check was given. In fact, during the presentation of the People's case when appellant's counsel attempted to cross-examine the People's witnesses con-

cerning the details of the real estate transaction, the district attorney objected to such examination as irrelevant and the court agreed with the prosecutor. We cannot understand the reason for this attitude, unless at that time the prosecutor had already determined to withdraw the larceny charge. In fact, it was not withdrawn until the People had rested their case.

Again, as part of his defense, appellant attempted to prove the facts in connection with the delivery of the $500 check to the Mortgage Commission. The trial court excluded all proof on this subject, ruling that, as at that time the larceny counts were out of the case, all transactions in connection with the $500 check were immaterial. While such a ruling might be correct under other circumstances, we find that under the circumstances of this case it was improper. One of the elements of the crime of forgery is the intent to defraud. (Penal Law, § 887.) While it is true that it is not essential in order to prove forgery that the People establish the intent to defraud any particular person or corporation (*People* v. *Anderson,* 210 App. Div. 59; affd., 239 N. Y. 534), and while the existence of a fraudulent intent might have been found here even if the $500 check had not been issued, we find that as the People's case was presented there had been an attempt to establish that the giving of the $500 check had some bearing on appellant's fraudulent purpose in uttering the alleged forged instrument. Accordingly, defendant was entitled to show the true nature of the transaction with respect to the $500 check. A finding by the jury concerning the existence or absence of a fraudulent intent with respect to the uttering of the alleged forged instrument might well have been affected by consideration of the circumstances under which the $500 check was given. In any event, as the People had charged that the issuance of the $500 check was part of appellant's scheme to defraud and had placed said check in evidence, it was proper to permit appellant to controvert any claim of fraudulent intent in connection with it by showing that the $500 check was not to be presented for collection.

We find further error in the receipt in evidence of People's Exhibit 6. This exhibit consisted of a number of documents found in defendant's possession, the effect of which was to show that he had used other names in connection with various business transactions. Among the documents was a passport which contained an entry to the effect that defendant had been expelled from Brazil as an undesirable person. Defendant did not take the stand as a witness and thus did not submit the question of his credibility to the jury. Under the circumstances these documents were wholly irrelevant and prejudicial.

In addition to the foregoing errors, we find that defendant was prejudiced by a statement made by the trial court in its charge to the jury. In his summation, appellant stated that conviction for forgery meant that he would spend ten or perhaps twenty years behind prison bars. The trial court sustained the district attorney's objection to any reference by defendant to the sentence that might be imposed upon him.

Section 420 of the Code of Criminal Procedure requires the court in a criminal case to charge the jury that in determining the question of guilt they must not consider the punishment that may be imposed. It was correct, therefore, for the court to advise the jury of this rule. However, in its charge to the jury, the trial court went beyond this and said: " The matter of possible punishment is a matter that rests entirely with the court. In other words, it is not for the jury to go into the jury room and say, ' If we find the defendant guilty, what will he get? Would he get a suspended sentence? Would he get a day? What will he get? What sentence will the court impose? "

We find that the suggestion contained in the court's charge as to the possibility of suspension of sentence or the imposition of only a day in prison was improper. It may have conveyed to the jury the idea that the matter of conviction was of less importance because no imprisonment, or a very brief term of imprisonment, might be imposed by the court after a conviction. As was said in People v. Santini (221 App. Div. 139, 142; affd., 246 N. Y. 612), it " may have been accepted by the jury as tantamount to an invitation to convict the defendant in consideration of the court's implied promise to exercise leniency." The statement which we have held objectionable was unnecessary in order to eradicate any possible error committed by defendant in referring to the possibility of a long term of imprisonment though we have no doubt that the court made the statement with that object in view.

We may not hold, under the present circumstances, that either of the errors above referred to was harmless or that they may be overlooked under section 542 of the Code of Criminal Procedure.

For these reasons, we reverse the judgment appealed from and order a new trial.

TOWNLEY, GLENNON and COHN, JJ., concur; MARTIN, P. J., concurs in result.

Judgment unanimously reversed and a new trial ordered.